UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HOWARD E. LEVENTHAL,

                Plaintiff,

-against-

WINSTON M. PAES, MARY A. HANDELAND, LORETTA LYNCH, CHRISTOPHER DELZOTTO, LORRAINE MARX, CHRISTINE KLOTZ, JANE PROBST, CHARLES COLODNY, GENE SCHENBERG, AMG THE FAMILY DOCTORS, and ADVOCATE MEDICAL GROUP,

                Defendants.

**MEMORANDUM DECISION AND ORDER**

17 Civ. 2496 (BMC)

**COGAN**, District Judge.

    Plaintiff Howard Leventhal, currently incarcerated in the Federal Correctional Institute in Pekin, Illinois, brings this *pro se* action pursuant to "the Constitution of the United States, the Bill of Rights, the 1st, 5th, 8th and 14th Amendments,[1] the Parental Kidnapping Prevention Act and Uniform Child Custody Jurisdiction Act (28 U.S.C. [§] 1738A), 28 U.S.C. [§] 1367, the Intercountry Adoption Act (42 U.S.C. [§] 14901), Bivens v. Six Unknown Named Agents [of Fed. Bureau of Narcotics, 403 U.S. 388 (1971)], Illinois State Law, Common Law of Torts[,] and other applicable law."  The Court grants plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 for the purpose of this Order and dismisses the complaint for the following reasons.

---

[1] Although Leventhal does not list 42 U.S.C. § 1983 by statute, his constitutional claims necessarily implicate § 1983 as it is the vehicle by which litigants vindicate their constitutional claims.

**BACKGROUND**

In October 2013, the United States Attorney for the Eastern District of New York, acting through Assistant U.S. Attorney ("AUSA") Winston Paes, the first-named defendant in this action, unsealed a criminal complaint against Leventhal, charging him with wire fraud, in violation of 18 U.S.C. § 1343, and aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1), 1028A(b), and 1028(c)(5).

The complaint alleged that Leventhal, as the president or managing officer of several entities, including mHealth Technologies Corp., formerly named Neovision USA, Inc. and Heltheo, Inc., entered into certain financing agreements with investors on the basis of false information, namely that his company had entered into a lucrative agreement with Health Canada, the department of the Canadian government with responsibility for national public health. To further his fraud, Leventhal provided the investors with a fraudulent agreement between his company and Health Canada and fabricated bank statements showing millions of dollars in transactions and payments from Health Canada.

In December 2013, Leventhal pleaded guilty to both counts. Leventhal was released on bail and subject to supervision in Chicago. On further investigation by the Government and after a hearing in September 2015, the Court revoked Leventhal's bail. The Government established at the hearing that Leventhal, while out on bail and through an alias, had created a purported non-profit entity, altered letters from elected officials, and used those letters to induce an investor to invest tens of thousands of dollars, much of which were used for personal expenses.

For a host of reasons, including the bail revocation and Leventhal's decisions to proceed counseled at times and *pro se* at others, Leventhal was not sentenced until December 2016, at which time the Court sentenced him to a total of five years in federal custody. Now as a federal

prisoner, he brings this lawsuit, principally against the AUSA that prosecuted him, in addition to several other defendants, alleging a mass of charges.

## **DISCUSSION**

The Prison Litigation Reform Act (the "PLRA") requires a district court to screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint, or any portion of the complaint, if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1); see also Liner v. Goord, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (noting that, under the PLRA, *sua sponte* dismissal of frivolous prisoner complaints is not only permitted but in fact mandatory). Similarly, pursuant to the *in forma pauperis* statute, the Court must dismiss an action if it determines that it "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). Thus, *pro se* complaints are "to be liberally construed," Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012), and interpreted "to raise the strongest arguments that they suggest," Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

3

Plaintiff brings this action pursuant to several statutes and laws, alleging (i) the unconstitutional denial of his right to intimate association with his adopted daughter; (ii) deliberate indifference to his health, life, and safety; (iii) denial of due process; (iv) denial of his right to privacy; (v) defamation; (vi) fraud; (vii) breach of contract; (viii) tortious interference; and (ix) intentional infliction of emotional distress. In addition to the AUSA who prosecuted him, Leventhal names as defendants the lead FBI agent who investigated him, the former Attorney General, Leventhal's ex-wife, his ex-wife's mother and sister, his former physician, and a band of characters who had the misfortune of knowing Leventhal and getting on his bad side during the course of the criminal prosecution.

Not only is the complaint frivolous on its face, but it is also a transparent attempt to harass a wide variety of people, including individuals who have had to defend against Leventhal's abuse of the legal process in the past, including his ex-wife. In essence, the complaint and Leventhal's affidavit allege that the AUSA, in conspiracy with the other defendants, orchestrated the above-named deprivations of Leventhal's rights. In addition, he seeks a court order modifying and enforcing his visitation rights with his adopted daughter.

The details underpinning his frivolous conspiracy legal theory is nothing more than Leventhal's petty and irrational fury at the federal prosecutor who convicted him. But such resentment cannot make up the basis of a claim alleging prosecutorial misconduct. It is well established that a prosecutor acting "within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." Shmueli v. City of New York, 424 F.3d 231, 236 (2d Cir. 2005) (internal quotations omitted). "Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New

York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations omitted). "A prosecutor is . . . entitled to absolute immunity despite allegations of his knowing use of perjured testimony' and the 'deliberate withholding of exculpatory information," because "[a]lthough such conduct would be reprehensible, it does not make the prosecutor amenable to a civil suit for damages." Shmueli, 424 F.3d at 237 (internal quotation marks omitted). Further, absolute immunity for prosecutorial acts can be defeated only if the prosecutor is alleged to have acted in the complete absence of jurisdiction, which is not the case here. Shmueli, 424 F.3d at 237.

The Supreme Court, in finding that prosecutorial immunity is absolute, reasoned that "suits against prosecutors for initiating and conducting prosecutions could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions." Burns v. Reed, 500 U.S. 478, 485 (1991) (internal quotation marks omitted). This is exactly what has happened here. Leventhal has funneled his resentment at getting caught, prosecuted, and convicted against the AUSA, without regard to the facts that Leventhal pleaded guilty and even recognizes in his complaint (and at sentencing) that he broke the law. Nowhere is Leventhal's resentment more clear than in his complaint where, in the same breath, he compares the massacre of indigenous Americans and slavery as national mistakes "competing for top billing" with the decisions permitting the AUSA to emigrate to the United States from South Asia, naturalize, get his law license, and become an AUSA. The Court will not permit Leventhal to harass the prosecutor, the former Attorney General, and the FBI agent who simply did their jobs. Prosecutorial immunity protects the first two and qualified immunity, at a minimum, protects the FBI agent.

Nor will the Court permit Leventhal to sue the witnesses against him, whether they bore witness through their sentencing submissions, affidavits to the Court, or during hearings. See

5

Rehberg v. Paulk, 566 U.S. 356, 367 (2012) ("[A] trial witness has absolute immunity with respect to any claim based on the witness'[s] testimony.").

Once the Court excises those allegations relating to Leventhal's sprawling prosecutorial misconduct conspiracy, which are dismissed as baseless, frivolous, or barred by some form of immunity, the remainder of the complaint relates to his custody battle with his ex-wife, which is also dismissed. No matter how many inapplicable statutes Leventhal can marshal that touch on adoption or children, the "domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377 (2014). And while there may be "rare instances . . . in which it is necessary to answer a substantial federal question that transcends or exists apart from the family law issue," this is not one of those cases. Id. at 13. This case is just another attempt by Leventhal to re-litigate a child custody order, with Leventhal seeking a "permanent order enforcing and mandating the visitation and communication provisions under [the custody dispute action], modified to suit [Leventhal's] current status as a prison inmate," in addition to family counseling sessions with his daughter. The Court will not do that.

## CONCLUSION

Accordingly, the complaint, filed *in forma pauperis*, is dismissed for failure to state a claim. See 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B). The Court has considered whether to grant plaintiff further leave to amend his complaint and determines that amendment here would be futile. See, e.g., Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (finding leave to replead futile where the complaint, even when read liberally, did not "suggest[] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe").

The Clerk is directed to enter judgment, dismissing the complaint.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal.  See <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

                                                              U.S.D.J.

Dated:   May 9, 2017
           Brooklyn, New York